20665

Kenneth Michael LoPIANO, Appellant, v. The STATE, Respondent.

(243 S. E. (2d) 448)

*Betty M. Sloan,* Columbia, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Emmett H. Clair* and *Staff Atty. Charles H. Richardson,* Columbia, *for respondent.*

April 17, 1978.

LITTLEJOHN, Justice:

The appellant, Kenneth Michael LoPiano, was indicted for murder and attempted housebreaking. With the advice

of appointed counsel, LoPiano entered a plea of guilty to voluntary manslaughter and attempted housebreaking, and was sentenced to 28 years imprisonment. This matter is here on appeal from a denial by the lower court of his application for post-conviction relief. He seeks to have his plea of guilty set aside upon the grounds that it was not voluntarily and intelligently given, and that the trial judge failed to ascertain a sufficient factual basis for the plea.

In support of his contention that his plea was not voluntarily and intelligently given, LoPiano maintains that neither the trial judge nor counsel fully and adequately advised him of (1) the elements of the offenses with which he was charged, or any defenses available to him; (2) the constitutional rights which he was waiving; (3) the nature of the charges to which he was pleading; or (4) the determinate nature of the sentence which he could receive.

The facts which gave rise to LoPiano's arrest and indictment are as follows: On the evening of November 17, 1974, he and two companions drove to Lynchburg, S. C. with the intention of breaking into a drug store. Upon arriving at the drug store, LoPiano got out of the car and his companions left the area. Being unable to gain entry to the store, he had begun to walk away when approached by two citizens who had heard the disturbance. LoPiano was placed under citizens arrest, and while one citizen held him, the other went to summon the police. In the meantime, LoPiano's two companions returned and ordered the citizen to release him. The citizen refused, and he was shot and killed by one of LoPiano's companions.

LoPiano argues that his counsel informed him that he was guilty of murder under the felony-murder rule, but made no effort to explain felony-murder. At the post-conviction hearing, LoPiano testified that he was given the following explanation of the felony-murder rule:

"[H]e used an example to where if me and another person or individual was in the act of committing a crime, and going there to commit that crime armed, then during that crime someone had gotten killed, that by me being there, whether I did it or not, indicates that I was just as guilty as he is, therefore, I am being charged just like he does."

This explanation is consistent with our previous pronouncements of the felony-murder rule, *State v. Crowe*, 258 S. C. 258, 188 S. E. (2d) 379 (1972), and it is clear from his testimony that LoPiano understood the nature of the crime with which he was charged.

The record also reflects that LoPiano was fully advised of the sentence which he could receive for voluntary manslaughter. LoPiano testified that he was advised by his attorney that if he plead guilty to manslaughter, he would receive a sentence of from two to thirty years. When questioned by the trial judge as to his understanding of the sentence he could receive, LoPiano replied: "I thought two to thirty; no less than two, no more than thirty."

LoPiano's appointed counsel testified that he gave Lo-Piano the following explanation of the consequences of entering a plea of guilty to voluntary manslaughter:

"I told him that if he entered a plea to voluntary manslaughter that it would also be a plea to the other charge of housebreaking or attempted housebreaking, the attempted breaking and entering, and that the sentence would be left up to the Judge because I had discussed the matter with them and they said that they would accept a plea but that we would have to take our chances with the sentence from the judge; and I explained to him that it would be a sentence of somewhere between two to thirty years."

Before accepting his plea, the trial judge extensively questioned LoPiano regarding his understanding of his plea:

"Q. Do you understand what you are pleading guilty to?
"A. Yes, sir.

"Q. Do you understand that you could be tried for murder and the jury may find you not guilty? They may find you guilty of manslaughter, and they may find you not guilty and you want to waive your right to trial by jury and plead guilty?

"A. Yes, sir.

"Q. Attempted housebreaking carries five years. Do you understand that?

"A. Yes, sir.

"Q. Nobody promised you anything or nobody threatened you?

"A. No, sir.

"Q. You're pleading guilty to manslaughter and you can get from two to thirty years.

"A. Yes, sir.

"Q. Do you understand that under the recent Supreme Court decision for murder, if the jury does not recommend mercy, you can get the electric chair, and if they recommend mercy, you can get life imprisonment?

"A. Yes, sir.

"Q. You're not pleading to manslaughter because of that?

"A. Yes, sir.

"Q. You're pleading guilty to manslaughter because you are guilty?

"A. Oh, yes, sir.

"Q. Mr. LoPiano, are you under the influence of any drugs or any narcotic at this time?

"A. No, sir.

"Q. You understand what you're doing?

"A. Yes, sir.

"Q. You're pleading guilty freely and voluntarily?

"A. Yes, sir.

"Q. Kenneth Michael LoPiano, you understand what you're pleading guilty to?

"A. Yes.

"Q. You are pleading guilty because you are guilty?

"A. Yes.

"Q. Mr. Jennings, Mr. Robert Jennings has advised you of all your rights?

"A. Yes, sir.

"Q. You're satisfied with his services?

"A. Yes, sir.

"Q. Have you asked him to do anything for you that he hasn't done?

"A. No, sir.

"Q. You've talked to him on numerous occasions?

"A. Yes, sir.

"Q. He is the public defender of this county. Is that your father standing beside you?

"A. Yes, sir.

"Q. And y'all are satisfied, both of you are satisfied with the services of the public defender?

"A. Very much so."

LoPiano argues that the trial judge erred in failing to explain the constitutional rights which he would be waiving by entering a plea of guilty. He maintains that *Boykin v. Alabama*, 395 U. S. 238, 89 S. Ct. 1709, 23 L. Ed. (2d) 274 (1969) made Rule 11 of the Federal Rules of Criminal Procedure (which requires an enumeration of the specific federal constitutional rights which are waived upon a plea of guilty) applicable to the state courts. This contention was considered in *State v. Lambert*, 266 S. C. 574, 225 S. E. (2d) 340 (1976), wherein we stated:

"The test established by *Boykin v. Alabama*, . . . is whether the record establishes that a guilty plea was voluntarily and understandingly made. If the record shows that the plea was so entered, then it is not silent as to the waiver of his constitutional rights. We do not read *Boykin* . . . to require that the trial judge direct the defendant's attention

to each and every constitutional right and obtain a separate waiver of each. *Wade v. Coiner,* 468 F. (2d) 1059, 1061 (4th Cir. 1972). We believe that an enumeration of specific rights waived is not required where the record otherwise reveals affirmative awareness of the consequences of a guilty plea. *Stinson v. Turner,* 473 F. (2d) 913 (10th Cir. 1973)."

We are satisfied from the record that LoPiano's plea was entered freely, voluntarily and intelligently.

LoPiano next argues that the trial judge erred in failing to establish on the record a factual basis for accepting his guilty plea. Prior to acceptance of the plea, Sheriff Liston Truesdale presented the trial judge with an accurate factual account of the circumstances which gave rise to the charges against LoPiano. This procedure was in keeping with our holding in *State v. Armstrong,* 263 S. C. 594, 211 S. E. (2d) 889 (1975). We are not here concerned with the weight or sufficiency of the evidence to sustain a conviction. By entering a plea of guilty, LoPiano waived his right to attack his conviction on this ground. Since we have determined that LoPiano's plea was entered voluntarily and understandingly, he does not now have the right, in post-conviction proceedings, to attack the plea upon the ground that the facts were insufficient to establish the offense to which he pled. Section 17-27-20(a)(6), *Code of Laws of South Carolina* (1976); *Ramey v. State,* 257 S. Ct. 127, 184 S. E. (2d) 544 (1971).

Finally, LoPiano contends that he was denied effective assistance of counsel. Although this argument was not raised in his application for post-conviction relief, the lower court considered this contention and found it to be without support in the record. We agree.

The exceptions of appellant are overruled and the judgment below is

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.